# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

###### AT THE

## OCTOBER TERM, 1917.

---

### 9044. CASTLEBERRY v. THE STATE.

1. The fact that the judge, in the exercise of the broad discretion vested in him, allowed the solicitor-general during the trial, over the objections of the accused, to propound leading questions to a witness for the State is not cause for a new trial, it not appearing that such discretion was abused. *Russell* v. *State*, 94 *Ga.* 594 (20 S. E. 422); *Doster* v. *State*, 93 *Ga.* 43 (3) (18 S. E. 997); *McCrary* v. *State*, 137 *Ga.* 784 (74 S. E. 536); *Wade* v. *State*, 11 *Ga. App.* 411 (7) (75 S. E. 494).

2. The excerpt from the charge of the court to the jury, complained of in the 3d ground of the amendment to the motion for a new trial, when considered in connection with its context, does not require a new trial.

3. There was some evidence which authorized the giving of the charge complained of in the 4th ground of the amendment to the motion for a new trial, and it was not erroneous for any other reason assigned.

4. The excerpt from the charge complained of in the 5th ground of the amendment to the motion for a new trial was not erroneous for any reason assigned.

5. Under the facts of the case the court did not err in refusing to charge: "If the female's consent was obtained by the defendant by promise of marriage and fear of bodily harm, then in that event you would not be authorized to find him guilty of the charge of seduction."

DECIDED OCTOBER 30, 1917.

Indictment for seduction; from Grady superior court—Judge Harrell. June 23, 1917.

*S. P. Cain, J. Q. Smith,* for plaintiff in error.

*R. C. Bell, soliictor-general, F. A. Hooper,* contra.

BROYLES, P. J. The fifth headnote alone needs elaboration. The State's evidence was undisputed, outside of the defendant's statement, and demanded that a verdict of guilty be returned. The defendant in his statement declared, that he had gone for

about six months with the woman alleged to have been seduced by him; that he proposed marriage to her, and was accepted; that he procured a license to marry her, and often begged her to marry him, but she continually refused to do so; that he had never had sexual intercourse with her; that after her continued refusals to marry him he left the State and went to Florida, to help make a living for his mother and sister; and that when the officer came after him he voluntarily returned with him, without requisition papers. The record further shows that after the defendant had been arrested, and while he was in jail, he wrote three different letters to the woman alleged to have been seduced (the prosecuting witness), in which he asked her to come to the jail to see him, stating that he wanted to marry her, and suggested that she marry him and stop the prosecution. She testified, that the defendant had gone with her a month or two before they became engaged; that they had been engaged about a year before they had sexual intercourse; that the defendant secured a license for their marriage, which he gave to her; that she yielded to him on the first occasion, because of his begging and his promises to marry her, and also because of her fear of bodily harm from him if she refused; that after this first time the defendant had sexual intercourse with her on several other occasions; that she became enceinte, and notified the defendant of her condition, and begged him to keep his promise to marry her; that he refused to do so, but continued to visit her until two or three months before her baby was born, when he notified her that he was going away, and she never saw or heard from him again until after he was arrested; that she had never had sexual intercourse with any other man; that she had never refused to marry the defendant, but on the contrary had on many occasions pleaded with him to keep his promises and marry her.

Upon the trial a timely written request to give in charge to the jury the language quoted in the 5th headnote was presented to the judge, and he refused it. Under the foregoing facts we do not think his refusal was error. In *Jones* v. *State,* 90 *Ga.* 616 (16 S. E. 380), it was held: "While an indictment for seduction can not be sustained by evidence showing that a rape was committed, the mere fact that the female offered some slight resistance to the sexual intercourse does not make the crime rape, when it appears that she really consented to the act, and that the accused did not

have carnal knowledge of her forcibly and against her will." And in the opinion in that case we find the following language: "Sexual intercourse resulting from seduction must necessarily be committed and accomplished with the consent of the female. This is an essential and indispensable element of this particular crime. Rape, being the carnal knowledge of a female forcibly and against her will, necessarily implies the entire absence of consent on her part. It follows, plainly enough and without argument, that a rape can not be made the basis of a prosecution for seduction. The two offenses are so totally different, they can not be confused, nor can one of them by any possibility, legal or otherwise, be substituted for the other. People v. Brock [35 Mich. 691], 31 N. W. Rep. 585. While this is manifestly true, it can scarcely be doubted that no modest girl or woman, upon the occasion of her first carnal contact with a man, will readily submit to the intercourse without some reluctance and some show of resistance. The extent to which this resistance will go depends largely, we presume, upon the nature, education, surroundings and previous associations of the female. We imagine it would be very difficult indeed to find a virgin of any age who would boldly and without shame or hesitation indulge for the first time in the sexual act; and while she may consent to it, it is perfectly natural to expect a greater or less degree of reluctance on her part. Indeed, it is easy to imagine that a woman may yield herself to the sexual embraces of a man when the act is absolutely repulsive to her, and offends, in the highest measure, her every sense of delicacy. . . That a woman exhibits hesitation, reluctance and a slight degree of physical resistance does not, by any means, make the intercourse, when accomplished, rape. . . The evidence in this case shows beyond doubt that Miss Smith, on the occasion when she first had sexual intercourse with the accused, really consented to the act, and that he did not then, nor at any other time, have carnal knowledge of her by force. On cross-examination she did use some expressions tending to show a want of consent on her part, and from which it is sought to draw the inference that the connection was had by force and violence and against her will; but the only fair and reasonable conclusion from her testimony is that she yielded to the wishes of the accused, and this is doubtless the truth of the case. . . Even if the first sexual contact between the accused and herself

had amounted to a rape, and he had afterwards, by persuasion and promises of marriage, obtained her free consent to have intercourse with him, and thus seduced her, he would be guilty of the crime of seduction. A virtuous woman upon whom the crime of rape has been committed does not thereby lose her virtue; and, if unmarried, there is no reason why she may not afterwards become the victim of seduction by her ravisher." Applying the principle of this ruling to the facts of the instant case, it seems to us that although the prosecuting witness testified that she yielded to the defendant on the first occasion because of his begging and his promises to marry her, and also because of her fear of bodily harm if she refused, her evidence taken as a whole clearly shows that her predominant and controlling reason for yielding to him was his persuasion and his promise of marriage. And moreover, as stated in the case just quoted from, even if she had consented to the first sexual intercourse solely because of her fear of bodily harm, which would have amounted to a rape, and he afterwards, by persuasion and promises of marriage (as is shown by the evidence in the case), obtained her free consent to have intercourse with him, and thus seduced her, he would be guilty of the crime of seduction.

The evidence amply authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Bloodworth and Harwell, JJ., concur.*