THE PLUME & ATWOOD MANUFACTURING COMPANY *et al.*

*v.*

FRANK C. CALDWELL, Assignee.

*Filed at Ottawa January 22, 1891.*

1. INSOLVENT DEBTORS—*voluntary assignment—prior liens—under execution and attachment—jurisdiction.* Where two or more courts have concurrent jurisdiction of the same subject matter, the court first acquiring it by service of process will retain the same, to the exclusion of the other. Therefore, the county court has no power to interfere with the custody of the sheriff of property acquired through executions and writs of attachment issued from the circuit court, upon an assignment of the debtor made subsequent to the levy under such writs.

2. The assignee of an insolvent debtor takes the assigned property subject to all valid liens thereon, and when it is in custody of the sheriff under valid executions and writs of attachment, the deed of assignment can operate only upon the residue after satisfying such prior liens. If such writs will not create valid liens on the property assigned, the assignee may, under the order of the county court, institute proceedings in the proper forum for its recovery.

3. A voluntary assignment by an insolvent debtor, after a valid levy of an execution or writ of attachment on all his personal property, and while the sheriff has the same in his custody, fails to confer jurisdiction over such property upon the county court; nor will that court have power to interfere with the execution of process of other courts of competent jurisdiction in respect of property not in the custody of the assignee, nor within the administrative control of the county court.

4. To invest the county court with jurisdiction over property of the assignor, the assignee must reduce the same to his possession. When this is done, the county court will have ample power to determine and adjust any and all liens and claims, and all conflicting rights or interests therein.

5. Where property assigned by an insolvent debtor is in the possession of a sheriff under execution or attachment, the circuit court issuing such writs will have exclusive jurisdiction of the property; but the parties interested may consent to an order by the county court directing the sheriff to turn over the possession of the property to the assignee, and this, when done, will waive the exclusive jurisdiction of the circuit court, and transfer the same to the county court.

6. Where, by the consent of parties, property in the hands of a sheriff under a valid, prior lien, acquired by attachment and execution, is sur-

rendered to the assignee of the debtor, with the agreement that the rights of the several parties to priority shall remain unchanged, the effect of such transfer of possession is, not to deprive any one of any right, but is to invest the county court with full jurisdiction to settle and adjust the conflicting claims of all parties, as they may be made to appear.

7. SAME—*burden of proof to show prior lien.* The burden of proof rests upon a party seeking priority in payment out of the proceeds of property voluntarily assigned for creditors, to show that he is entitled to such right. If he bases his right upon the levy of an attachment, he must show the existence of the debt upon which a judgment might be rendered.

8. SAME—*preference among creditors—rights of creditors—under the statute.* The statute which prohibits preferences between creditors of an assigning debtor is intended to regulate and limit the course and conduct of debtors after they have determined to make a general assignment, and has no application to the conduct of creditors, except in case of collusion with debtors. The creditor may, notwithstanding the statute, take steps to secure his debt as best he can, and the law will not deprive him of the fruits of his superior diligence, so long as he does no act resulting in an unlawful preference by the debtor.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. C. M. HARDY, for the appellants.

Messrs. KRAUS, MAYER & STEIN, for the appellees.

Messrs. FLOWER, SMITH & MUSGRAVE, for the Commercial National Bank.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is a contest between creditors of George Bohner & Co., an insolvent corporation of the city of Chicago, of which the appellee, Caldwell, was appointed assignee. The voluntary assignment of the corporation was consummated by the delivery of the deed of assignment, and placing the same of record, after the levy of an execution in favor of the Commercial Na-

tional Bank, and of three writs of attachment in favor of the appellants, creditors, severally. When the assignee sought to reduce the assigned property to possession, he found the sheriff in custody under said execution and writs of attachment, who claimed the right to hold the same, subject only to the order of the court from which his writs were issued. This, in effect, left nothing upon which the deed of assignment could operate, except the residue after discharging these liens, if they were valid liens upon the property. If, however, they did not create valid liens, the assignee might, under the order and direction of the county court, institute proceedings, in the proper forum, for the recovery of the property included in the assignment. (*Davis' et al.* v. *Chicago Dock Co.* 129 Ill. 180.) The county court, however, had no power or authority to interfere with the custody of the sheriff, acquired through the execution and attachments issued from the circuit court, except by consent of the several plaintiffs in said execution and attachments. It is familiar that where two or more courts have concurrent jurisdiction of the same subject matter, the court first acquiring it by service of process will retain the same to the exclusion of the other. Without consent the county court had no jurisdiction over the property, for the reason that it had first been levied upon and attached by the process of the circuit court. A voluntary assignment by an insolvent debtor, after a valid levy of an execution or writ of attachment on all his personal property, and while the sheriff has the same in his custody, necessarily fails to confer jurisdiction over such property upon the county court; nor will that court have power to interfere with the execution of process of other courts of competent jurisdiction, in respect of property not in the custody of the assignee, or within the administrative control of the county court. It has been repeatedly held, that to invest that court with jurisdiction over property of the assignor, the assignee must reduce the property to his possession. When this is done, the property passes within the administrative

control of the county court, and it will have ample power to determine and adjust any and all liens and claims, and all conflicting rights or interests therein. (*Preston* v. *Spaulding*, 120 Ill. 208; *Davis et al.* v. *Chicago Dock Co. supra.*) In such case, the possession of the assignee is that of the county court, and third persons claiming adversely must submit to the jurisdiction of that court.

Appellants deny the jurisdiction of the county court to pass judgment upon the validity of the liens created by the levy of their attachments. They insist that the circuit court alone had jurisdiction over the attached property, and could alone ascertain and declare their rights in respect of the same. This point might be conceded if the parties in interest had not, by consent, invested the assignee with the possession of the attached property, and thus clothed the county court with exclusive jurisdiction in respect thereof, and in respect of all claims thereon. The only defect in the jurisdiction of the county court was the want of possession by the assignee, and when that defect was supplied by the voluntary consent of appellants that the property should pass to the assignee, subject to their claims, the county court was clothed with full authority to settle all conflicting claims, including questions of priority that might arise in respect of such property. It was entirely competent for the parties to consent, as they did, to the order of the county court directing the sheriff to turn over possession of the property to the assignee. The rule giving exclusive jurisdiction to the court first acquiring it, is one that the parties may waive; and, by consent, the jurisdiction of the circuit court was here waived, and the property passed into the hands of the assignee, to be disposed of under the direction of the county court, to all intents and purposes as if the assignee had acquired possession prior to the levy, but subject to the lien created by such writs. It is true that the consent of appellants for the transfer of possession from the sheriff to the assignee, who is trustee for all the creditors

as well as for the debtor corporation, was upon the condition that such transfer should be subject to all priorities, liens and rights that might have been acquired by the levy of said attachment. The right of all parties to the attached property was to remain in *statu quo.* If appellants, by their attachments, had acquired valid liens, such liens were to remain unaffected by the order on the sheriff to surrender possession to the assignee. This determined no right in the creditors, but left such right for future adjudication by the court having jurisdiction of the insolvent's property. If the bank, appellee, had a prior lien by the levy of its execution, it was to continue a lien until the debt was paid. If, on the other hand, execution was obtained by fraud, or was preferential, then it would be set aside. And the same is true in respect of the attachments. These and all other questions, by the voluntary surrender of the property to the assignee, were submitted to the judgment of the county court. The result of this change of possession, and consequent change of jurisdiction, was not to deprive any of the parties of any legal right. Appellants might still have prosecuted their attachments to judgment in the circuit court, and thereby established the sums due them, and upon a showing to the county court that they would be entitled to judgment, that court would have been authorized to direct the assignee to retain sufficient of the funds in his hands to pay and satisfy whatever judgment might have been thus obtained, or might have determined the amount for which appellants had a valid lien, and by order upon the assignee compelled its payment in that court, and upon any question of fact arising, any of the parties might have had a trial by jury. *Hanchett* v. *Waterbury,* 115 Ill. 220.

On the hearing of the several petitions, and issues thereon, the county court found that the appellants had no valid lien on the property under or by virtue of the attachments. It necessarily followed that the county court must, in directing an assignee, pass upon and determine the question whether

appellant had or had not a valid and prior lien upon the property. If appellants had such lien, as before seen, it was clearly the duty of the county court to protect it; if it had not, to so determine, and order the sale of the property without respect thereto. The burden of proof was upon the appellants asserting their liens, and the court could not give them priority over other simple contract creditors, without proof that they were entitled to such priority. They wholly failed to show that any debt was due and owing by the insolvent to them, or either of them, at the time of the issuance of the several attachments. Without a debt existed and was due, no action would lie. No formal pleading is required in making issues to be tried by the county court in such cases, and it devolved upon the appellants to show, at least, that they had a cause of action upon which judgment might be rendered in the attachment suits. No judgment could have been rendered, under the attachment suits, without a debt was due and owing from the defendant to the plaintiffs in the attachment, at the commencement of said suits. We are not prepared to say that it was error in the county court to refuse to hold that appellants, by virtue of their writs and the levy thereunder, were entitled to a lien upon the property for any amount they might claim, without proof that there was some actual indebtedness due from the insolvent to the attaching creditors.

Appellants also object to the decree of the county court giving preference to the Commercial National Bank. They contend that the judgment and execution of the bank should have been adjudged void, as being a fraudulent preference within the Assignment law. It appears that Eames, president of the bank, and Bohner, president of the insolvent corporation, had several interviews as to the prosperity and financial condition of the Bohner company. On learning that the business of the corporation had not been successful during the past season, Eames requested Bohner to furnish a list of the liabilities of the corporation, which he did on January 26,

1889, Bohner then admitting the inability of the corporation to meet its obligations.  Eames sent for Smith, the attorney for the bank, and had a consultation with him.  The attorney, unknown to Bohner, advised that judgment be taken on the notes of the corporation to the bank, without delay.  These were judgment notes which had been executed at a prior date. Eames instructed Smith to procure judgment at once, but this determination and instruction were not communicated to Bohner.  The latter informed the bank, through its president, that some of the creditors urged him to make an assignment under the statute, but gave no intimation, as it appears, that it was then intended that an assignment would be made.  On the contrary, it appears he drew money to pay expenses of a trip east, to see his creditors, in the hope of making a composition or compromise.  All Bohner did was to give truthful information as to the financial status of his company, in response to the legitimate inquiries of his creditors.  No delay was made in preparing his assignment, or in delivering it, to enable the bank to acquire its lien.  As before said, the judgment notes had been given some time before that date, and the bank might have taken judgment long before the interview spoken of.

Section 13 of the Assignment act, which prohibits preferences among creditors, is directed toward insolvent debtors, and is intended to regulate and limit their course of conduct, after they have determined to yield the dominion and control of their property for the benefit of creditors, by making a general assignment.  It has no application to the conduct of creditors, except in case of collusion with debtors, by which an unauthorized preference is sought to be made.  The creditor may, notwithstanding the statute, take steps to secure his debt as best he can.  The law does not deprive a creditor of the fruits of superior diligence in securing his indebtedness, so long as he does no act resulting in an unlawful preference by the debtor.

This proof fails to show any collusion between the bank or its officers, and the insolvent corporation or its officers, for the purpose of giving the bank any preference over its other creditors. The judgment obtained by the bank was the result of information derived by its president as to the financial condition of the corporation, which it was the duty of the debtor to give and the right of the creditor to require. It appears that Bohner had no notice or intimation that the bank was about to or would take judgment until about the time that it was entered up, or that he determined to make any assignment for the benefit of creditors until after the bank had determined upon its course, and had actually entered its judgment.

We are of opinion that the county court committed no error in holding that the bank had a valid lien under its execution. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Magruder and Baker, JJ., dissenting.