STATE *v.* EDWARD VAN NESS.

February Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 3, 1938.

394

*Jerome, Graves & Graves* for the respondent.

*Alban J. Parker,* Deputy Attorney General, and *George H. Plumb,* State's attorney, for the State.

POWERS, C. J. On October 23, 1937, the State's attorney of Bennington County by an information in three counts prosecuted the respondent in the Bennington municipal court for selling intoxicating liquor on three specified dates. The respondent appeared, pleaded not guilty, and was released on bail. Thereafter and on December 15, 1937, the State's attorney nol prossed the information pending in the municipal court, and a record thereof was made by that court. On December 16, 1937, the State's attorney filed an information in the county court charging the respondent with the identical offenses of selling above set forth, and included therein a fourth count charging the respondent with keeping intoxicating liquor with intent to sell the same on October 23, 1937. The respondent was arraigned in the county court, pleaded not guilty, and was released on bail. On December 24, 1937, the respondent filed a plea setting up the facts regarding the prosecution in the municipal court and insisting that the county court could not exercise its concurrent jurisdiction because the jurisdiction of the municipal court having once been invoked prior to the proceedings in the county court it was and continued to be exercised as to the charges of selling. The plea of not guilty still stood on the docket, but on January 11, 1938, it was, by leave of the court, withdrawn and stricken off. The respondent then filed an amended plea based upon the same grounds as are above specified. To the special plea, as amended, the State demurred. The demurrer was sustained and the respondent excepted. Then the respondent renewed his plea of not guilty and the case went to trial before a jury. A verdict of guilty was returned on each of the four counts. The respondent then moved in arrest of judgment .on the ground that the information was insufficient to support a judgment. This motion was overruled, and the respondent excepted. In other ways the respondent attempted to raise the same questions as were covered by the foregoing exceptions, but special consideration of these is not required. Judgment on the verdict was rendered on January 21, 1938, and the respondent was sentenced to be confined in the state prison for the term of not less than four and one-half months and not more than five months on each of the four counts and it was ordered that the sentences should run concurrently.

It is a little difficult to understand why the respondent is here, because the count for keeping with intent to sell was never in the municipal court, and the special plea does not cover it. So if he prevails to. the full extent of his claims, the most that can be done for him will be to reverse the judgment and vacate the sentences on the three counts for selling, leaving the judgment and sentence on the count for keeping. His imprisonment would be for exactly the same time, though for only one of the four charges made against him.

■ The respondent contends that the county court could not exercise its jurisdiction in this case, because the municipal court had already taken jurisdiction of it and that the jurisdiction of the latter court was exclusive and continuous until the specific charges made against the respondent were finally determined. In support of his contention, he calls attention to 16 C. J. 437, where it is said: "The State cannot, after filing a complaint or information in a court having jurisdiction, enter a *nolle prosequi* and file an indictment or information charging the same crime in another court having concurrent jurisdiction." The cases cited in support of this statement, so far as now accessible, justify it. However, we are not impressed with their reasoning and are not content with their conclusion. The rule adopted seems to us to be unnecessarily and unreasonably restrictive. To us, it seems quite enough to answer the requirements of politeness and policy, to hold that the court which first acquires jurisdiction of a matter is entitled to exclusive authority over it as long as it is pending before it in any of its aspects. But when the jurisdiction of that court comes to an end in any legal way and the matter is no longer before it, then if another prosecution can be brought anywhere, it may be brought in another court of competent jurisdiction.

The subject under discussion is not wholly unfamiliar to this Court. A very important phase of it was involved and discussed in *Bank of Bellows Falls* v. *Rutland & Burlington Railroad Co.*, 28 Vt. 470. That was a proceeding in equity wherein the plaintiff sought to restrain the defendants from prosecuting an action at law then pending in a court of competent jurisdiction in the State of Massachusetts. Judge Bennett, speaking for the Court, (p. 477) says: "We hold it to be a sound rule of law, based upon the most salutary principle, that in all cases of

concurrent jurisdiction, the court that has first possession of the matter should be left to decide it * * *.'' But the case holds that in a proper case a court of equity has the power to stay a party from proceeding at law in a foreign court or in a court of a sister state, and would exercise the power in a case where the ends of justice require it, notwithstanding the courtesy which should be maintained between courts. It was considered that the case then in hand was not a proper case for equitable interference. The law of Judge Bennett's opinion has been accepted at home and abroad as sound and authoritative. Its significance and importance here lies in the fact that it appears to follow the rule so far as stated therein, but does not consider it one that is to be given unyielding effect in all cases.

The rule was approved and applied in *Whittier* v. *McFarland,* 79 Vt. 365, 369, 65 Atl. 81, but only to the extent above stated. That was a petition for the custody of a minor child between the divorced parents. It was considered that, by the terms of the statute, the jurisdiction of the county court by which the divorce was granted was continued for such further decree respecting the child as it might deem expedient. It was held that in these circumstances *habeas corpus* could not be availed of to determine the custody.

The rule was referred to with apparent approval in *In re Dawley,* 99 Vt. 306, 324, 131 Atl. 847, but the case before the Court did not require a discussion of it in any aspect here involved.

*State* v. *Stanley,* 82 Vt. 37, 71 Atl. 817, was an information filed in the county court for cruelty to animals. The respondent filed a motion to dismiss the information because proceedings had been had before a justice of the peace for the same offense, in which the justice bound him over instead of disposing of the case. The court found that the justice and the county court had full concurrent jurisdiction and held that the failure of the justice to exercise his jurisdiction did not bar the proceedings in the county court. The opinion was given by Judge Munson, who sat in *Whittier* v. *McFarland,* decided only about two years before. While the rule herein discussed was not referred to in the opinion of the Stanley case, we cannot believe that it was not in the mind of the Court, and we are convinced that the real reason why the proceedings before the justice did

not prevent proceedings in the county court was because the jurisdiction of the justice had come to an end.

██ We hold that the jurisdiction of the municipal court ceased when the *nolle prosequi* was entered and that the demurrer was properly sustained.

██ Then, too, the rule is one that a respondent may waive, and he does waive it unless he asserts his rights under it at his first opportunity and before he submits to the jurisdiction of the second court. *Plume & Atwood Mfg. Co.* v. *Caldwell*, 136 Ill. 163, 26 N. E. 599, 29 A. S. R. 305, 307. Though it is here spoken of as a plea to the jurisdiction, the special plea is in essence a plea in abatement. It does not deny the jurisdiction of the county court to try that class of cases to which this belongs, but it sets up external matters which, it is alleged, afford a sufficient reason why that jurisdiction should not be exercised in this case. The respondent relies upon abatable matter, and, if he had prevailed, a proper judgment would have been that the case against him should abate. See *Boright* v. *Williams*, 87 Vt. 245, 247, 88 Atl. 735. As we have seen, he first submitted to the jurisdiction by pleading not guilty and giving bail for his appearance in that court. His special plea came too late. He had waived the advantage of all abatable matters, if he had any.

As we have seen, the information is in four counts. The first three are substantially alike, each alleging that the respondent on a certain specified day, at Bennington, in the County of Bennington "did, without authority of law, sell to" a designated person "intoxicating liquor, to wit one bottle of ale— to wit one bottle of Stanton Pale Ale, contrary to the form of the statute," etc. The fourth count alleges that the respondent, at Bennington, upon a certain day "did keep intoxicating liquor, to wit, one quart of Ridgewood whiskey, so-called, thirty-one bottles of Stanton Pale Ale, so-called, with intent to sell the same without authority of law, contrary to the form of the statute," etc.

 It is a well-established principle of criminal pleading that while reasonable certainty in the statement of the crime suffices, and all that is required is that the charge be set forth with such particularity as will reasonably indicate the exact offense which the accused is alleged to have committed, and will enable him intelligently to prepare his defense, and, if found

guilty, to plead his conviction in a subsequent prosecution for the same offense, a complaint or information which may apply to one of several definite offenses, without specifying which, is fatally defective under the common law, and equally so under Ch. 1, art. 10, of the Constitution of Vermont, which provides that "in all prosecution for criminal offenses, a person hath a right to demand the cause and nature of his accusation." *State* v. *Villa*, 92 Vt. 121, 123, 102 Atl. 935, and cases cited; *State* v. *Wersebe*, 107 Vt. 529, 532, 181 Atl. 299; *State* v. *Webber*, 78 Vt. 463, 466, 62 Atl. 1018; *State* v. *Monte*, 90 Vt. 566, 568, 99 Atl. 264.

*State* v. *Villa, supra,* was a prosecution for the illegal sale of intoxicating liquor, under P. S. 5102, which provided that "No person shall furnish or sell, or expose or keep with intent to sell, any intoxicating liquor, except as authorized by this chapter." The complaint charged that the respondent at a time and place named, did "sell intoxicating liquor without authority" contrary to the statute and against the peace, without further particulars or description. It was held that since there were, under various sections contained in P. S. Ch. 219, several different ways in which one could be guilty of selling intoxicants illegally, each amounting to a distinct statutory offense and requiring different evidence to sustain or defend it, it could not be said that the respondent was sufficiently informed of the particular offense charged against her. The information was defective and the judgment of guilty was arrested. In *State* v. *Elliott*, 93 Vt. 449, 113 Atl. 283, the complaint was in the same words, and the judgment was arrested upon the authority of the Villa decision.

In *State* v. *Romano*, 101 Vt. 53, 140 Atl. 492, the question arose under sec. 4, No. 204, Acts of 1921, which provided that "A person shall not manufacture, sell, barter, transport, import, export, deliver, prescribe, furnish or possess any intoxicating liquor except as authorized by this act," or, in certain instances by the laws of the United States. This statute, which later became P. L. 8081, was enacted to bring the State law into conformity with the Eighteenth Amendment to the United States Constitution. The information charges that the respondent, at the time and place named, "did sell intoxicating liquor to one John C. Winters without authority of law so to do contrary to

the form, force and effect of the statute,'' etc. It was held that under the statute every sale or furnishing of intoxicating liquor constituted an offense regardless by whom, or under what circumstances made, unless the act fell within one of the statutory exceptions; and that since this was so, and the exceptions were not such as need be negatived in the information, the charge was set forth with a sufficient degree of certainty and particularity. The principle of the Villa and Elliott cases was recognized, but was held not to be applicable under the terms of the statute involved.

■ The present statute (sec. 3, No. 1, Acts of Special Session of 1934, as amended by sec. 1, No. 197, Acts of 1935), provides that ''A person * * * shall not furnish or sell or expose or keep with intent to sell any malt or vinous beverage, or spirits, except as authorized by this act * * *.'' But, as the respondent's brief points out, there are several different ways in which intoxicating liquor can be illegally sold. For example, under the various sections of the act of 1934, as amended by the act of 1935, it is unlawful to sell malt or vinous beverages or spirits without having first obtained a license of the appropriate class; for a licensee of the first class to sell malt or vinous beverages to be consumed off the premises, or for a licensee of the second class to sell such beverages for consumption upon the premises, or for a licensee of either class to sell spirits; for a licensed wholesale dealer to sell at retail; or for a hotel keeper or restaurant proprietor, holding a third class license, to sell spirituous liquors for consumption not on the premises; or for the trustee, administrator or executor of a bankrupt or deceased licensee or druggist, to sell the latter's stock of intoxicants after the expiration of thirty days from the bankruptcy or death, or to anyone but the holder of a license of the same class, or to another druggist, and the same provisions apply to a licensee to sell by way of barter, or to a person to whom the sale of liquor has been forbidden by the liquor administrator. By the regulations of the liquor control board (1937) which, having been made and promulgated under the authority of sec. 12, No. 1, Acts of Special Session of 1934, as amended by sec. 5, No. 196, Acts of 1935, have the force of law (*State* v. *Peet*, 80 Vt. 449, 455, 68 Atl. 661, 14 L. R. A. (N. S.) 677, 130 A. S. R. 998), other sales by licensees are prohibited, among them sales of malt or vinous beverages to a person

■

under eighteen years of age, sales of spirits to a person under twenty-one years of age, and sales of alcoholic liquor to a person apparently under the influence of liquor. And under sec. 14, No. 196, Acts of 1935, "a person * * * shall not sell any malt or vinous beverages or spirituous liquors on any Sunday or any national, state, town, city or village election day" with certain exceptions.

■ ■ The foregoing list of infractions of the law relating to the sale of intoxicating liquor is by no means complete, yet it serves to show that the allegation that the respondent sold liquor without authority, without further specification, is not sufficient to indicate to him with reasonable certainty the exact offense with which he is charged. But counts 1 and 2 are not so indefinite as the respondent would have us believe. The dates alleged are August 29, 1937, and October 10, 1937, and each of these days was Sunday, a fact of which judicial notice may be taken. *Schmidt* v. *Town of Manchester,* 92 Conn. 551, 103 Atl. 654, 655; *First National Bank* v. *Kingsley,* 84 Me. 111, 24 Atl. 794; *Wilson* v. *Vanleer,* 127 Pa. 371, 17 Atl. 1097, 1098, 1099, 14 A. S. R. 854; *Singer* v. *First Criminal Court,* 79 N. J. 386, 75 Atl. 433. Thus, the offense of selling on Sunday, in violation of sec. 14, No. 196, Acts of 1935, is charged with the requisite degree of certainty and particularity. It will be observed that the statute by its terms refers not only to licensees, but to all persons, and so, according to *State* v. *Romano,* 101 Vt. 53, 56, 140 Atl. 492, every sale of liquor on Sunday, regardless by whom made, constitutes an offense, unless it falls within one of the exceptions mentioned therein, and these exceptions are not such as need be negatived in the information. See sec. 88, No. 1, Acts of Special Session of 1934, as amended by No. 197, Acts of 1935. Counts 1 and 2 are sufficient as against the objection which we are now considering.

■ This, however, cannot be said of count 3, which is clearly insufficient under the rule announced in the Villa and Elliott cases.

■ ■ And so is count 4. The language of the statute does not indicate that the crime of keeping with intent to sell relates only to those who have not procured a license, as' in *State* v. *Monte,* 90 Vt. 566, 567, 99 Atl. 264. One may not, under the present law, keep with intent to sell except as author-

ized therein. Hence while it is unlawful to do so without a license, it is also unlawful to do so with a license if the intent is to sell contrary to the conditions of the license, or to a person under the specified age, or to one to whom a sale has been forbidden, or by means of barter, or in other prohibited ways, hereinbefore mentioned. There is an intimation at the close of the opinion in the Monte case (p. 569) that if a similar question had been raised upon trial a different result might have been reached.

 The fact that these counts are drawn in accordance with the form prescribed by statute (sec. 87, No. 1, Acts of Special Session of 1934), does not obviate the constitutional objection, under Ch. 1, art. 10 of the fundamental law of this State. *State* v. *Villa*, 92 Vt. 121, 124, 102 Atl. 935, and cases cited.

 It is argued that the Legislature has failed to define intoxicating liquor and therefore no offense is described in any of the counts. Since we have held that counts 3 and 4 are insufficient, this objection is considered only as it bears upon counts 1 and 2. It is, however, unavailing. In each count the particular beverage charged to have been illegally sold is specified under the *videlicet*. Sec. 2, No. 1, Acts of Special Session of 1934, as amended by sec. 1, No. 196, Acts of 1935, defines "malt beverages" as "all fermented beverages of any name or description manufactured for sale from malt, wholly or in part, or from any substitute therefor, known as beer, porter, ale · and stout, containing not less than one percent nor more than nine percent of alcohol by volume at sixty degrees Fahrenheit," and the definition of "spirits" includes "malt beverages containing more than nine percent of alcohol by volume at sixty degrees Fahrenheit." While no specific definition of intoxicating liquor as such is given, the statute (Act of 1934), read as a whole, and construed, as it must be, liberally, for "the protection of the public welfare, good order, health, peace, safety and morals of the people of the State" (sec. 1), leaves no doubt that malt beverages of the prescribed alcoholic content are intended to be classed as intoxicants. The term "intoxicating liquor" as used in various sections of the act and the amendatory act of 1935 plainly refers to malt beverages and spirits, as defined. And so the charge that the respondent sold "intoxicating liquor,

to wit one bottle of ale," etc., was sufficient without alleging the percentage of alcohol contained therein.

■ Whether the evidence produced at the trial supported counts 1 and 2 in that it showed unlawful sales on a Sunday is not an issue before us. In the absence of a showing to the contrary we will assume that it did. The respondent has raised no question of variance between averment and proof, here or in the court below; neither has he furnished us with the transcript. The only claim concerns the sufficiency of the charge alleged in the information. The sentence imposed by the trial court is within the limits permitted for a sale on Sunday. Sec. 14, No. 196, Acts of 1935.

■ ■ It has been held that where any count in an indictment is sufficient and the verdict is general, a motion in arrest cannot prevail. *State* v. *Smith,* 72 Vt. 366, 380, 48 Atl. 647; *State* v. *Hooker,* 17 Vt. 658, 669; *State* v. *Davidson,* 12 Vt. 300, 303; *State* v. *Downer,* 8 Vt. 424, 429, 30 A. D. 482. In all of these cases the various counts alleged the same offense in different language, and the same evidence was pertinent to each. Here, each count charges a separate and distinct crime, depending upon different proof for its substantiation. Yet it does not follow that the motion in arrest need be sustained as to all of them. In *State* v. *Bugbee,* 22 Vt. 32, 35, the respondent was charged with two distinct infractions of the liquor law in separate counts, one of which lacked supporting evidence. After general verdict of guilty, it was held, on exceptions, that the conviction on one count being right, a new trial would not be granted, but the respondent should be sentenced on that count alone. "This," said Bennett, J., "is in analogy to cases, where there has been a general verdict of guilty on several counts, when a part of them are bad." To the same effect is *State* v. *Wheeler,* 35 Vt. 261, 266; and *State* v. *Davidson,* 12 Vt. 300, 303. In *Neeper* v. *United States,* (8th Cir.) 93 Fed. (2d) 409, two respondents were convicted under two counts of an indictment, one of which was invalid. The sentences under both counts were identical and ran concurrently, but fines were also imposed. Under these circumstances it was held on appeal that the judgments and sentences under the valid count were affirmed, and the cause was remanded with a direction to remit the fine imposed under the invalid count.

 So here the judgment rendered on counts 1 and 2 will be allowed to stand. Since the sentences on all the counts are the same and run concurrently, and no fines were imposed, a remand is unnecessary.

*As to counts 3 and 4, the judgment is reversed, the motion in arrest is sustained, judgment is arrested and the respondent is discharged. As to counts 1 and 2 the judgment is affirmed. Let execution be done.*